

**NUMBER 13-09-00165-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DESHONE JARMANE WHITE A/K/A
DESHONE JARMAINE WHITE,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

---

**On appeal from the 24th District Court
of Goliad County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Garza**

Appellant, DeShone Jarmane White a/k/a DeShone Jarmaine White, was charged by indictment with aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (Vernon Supp. 2008). After a jury trial, appellant was convicted of the offense and was sentenced to ten years' incarceration in the

Institutional Division of the Texas Department of Criminal Justice with $316 in court costs assessed. By one issue, appellant argues that the trial court abused its discretion in admitting evidence of his extraneous conduct during the guilt-innocence phase. We affirm.

## I. BACKGROUND

The underlying offense involved an altercation between appellant and Robin Jones, a man whom appellant knew. On the evening of August 4, 2008, appellant approached Jones at a local horse stable where Jones was working. Appellant demanded to know the whereabouts of an individual whom appellant believed had "snitched" on him in a prior incident regarding a stolen pistol.[1] At trial, Jones testified that he told appellant he did not know the whereabouts of the individual, and appellant attacked him with a broken beer bottle. A struggle ensued and resulted in Jones receiving life-threatening cuts to his arms, including significant blood loss and damage to the attendant nerves and arteries in his arms. Jones was taken to the hospital where his injuries were treated. Appellant was arrested and charged with aggravated assault with a deadly weapon.[2]

Appellant's jury trial commenced on February 23, 2009. Appellant's trial counsel opted to make an opening statement immediately after the State made its opening statement. In his opening statement, appellant's trial counsel noted the following:

> Absolutely, Your Honor. May it please the Court . . . . Good morning. How are you? Ladies and gentlemen, what I ask you to do is listen to

[1] The record reflects that appellant served time in a county jail as a result of the incident pertaining to the stolen pistol.

[2] The indictment read as follows:

DESHONE JARMAINE WHITE on or about August 4, 2008 . . . did then and there intentionally and knowingly use a deadly weapon, to wit: a beer bottle, that in the manner of its use and intended use was capable of causing death and serious bodily injury, and did then and there intentionally and knowingly cause bodily injury to ROBIN JONES by cutting him on the arms with said deadly weapon; and the said DESHONE JARMAINE WHITE did then and there intentionally and knowingly threaten ROBIN JONES with imminent bodily injury by the use of said deadly weapon . . . .

everything with an open mind.  There is no doubt whatsoever that there was a fight.  There is no doubt whatsoever that someone was seriously injured.  There's no doubt that two people were injured by [the State's] testimony—I mean by [the State's] opening statement—excuse me, it's not testimony, but there will be testimony to show that.  So we've got two people injured.

. . . .

However, [l]adies and gentlemen, I am going to bring you evidence.  I am going to bring you evidence. *I'm going to bring you evidence showing that this was self-defense.*  And based on all the inconsistencies, based on all of the things that were not properly done in this case, ladies and gentlemen, I'm going to ask you for a verdict of not guilty at the end of this case and I believe I will bring you evidence, in addition to the holes in the State's case, that will demand that.  Thank you so much.

(Emphasis added.)

Later, Jones was called to testify about his recollection of the events transpiring on the evening in question.  The following exchange took place between the State and Jones when counsel for the State asked Jones about the altercation:

Q [The State]:        Where was he?

A: [Jones]:           He had ran up here.

Q:                   Out of view of where we have that sketch?

A:                   Yes, sir.  Yes, sir, it was probably way up in here somewhere.

Q:                   Okay.

A:                   So I waited on him and he come [sic] back and he started crying and he just had got out of jail and he said that his mom, mom don't love me and, you know, and she's—

At this point, appellant objected to Jones's testimony as improperly referencing appellant's prior bad acts, and he moved for a mistrial.  The trial court requested that both parties approach the bench, and the following exchange took place on the record:

3

THE COURT: [Counsel for appellant], what was it that he just said that you are concerned about?

[Counsel for appellant]: He just testified that my client had gotten out of jail, which would go, directly violate the motion in limine—mentioned other bad acts or other crimes, which the prosecution agreed to without prompting on anybody's part, especially my part. He threw it out there in front of the jury and I believe it's prejudicial and we'd ask for a mistrial based on those grounds.

[Counsel for the State]: I did warn him not to talk about that. I had no expectation he was going to say that. I think it was just an accident on his part, but in any case, we need to take this up anyways. I believe he has opened the door by his defense of self-defense. I have a case on that.

THE COURT: Well, why don't I just instruct the jury to disregard the comment that the Defendant was, had been in jail immediately before this and then I'll deny your motion for mistrial, okay.

[Counsel for the State]: But, Judge, I do want to take up the issue. I do want to get into the fact that the motive of this attack was DeShone arrested for possession of a stolen pistol, okay. The victim had seen him with a pistol sometime before, I think several weeks before, and had warned him he was going to get into trouble with that pistol. He was later arrested and locked up and we believe that the reason he attacked Robin is because he thought Robin had been a snitch and he was mad . . . . The motive for this attack was he was trying to get revenge because he thought that Robin had told the police about this pistol and that explains and if he, if he raises the issue of self-defense, which he has in his opening statement, then we're allowed to go into the motive—why he was attacked.

. . . .

[Counsel for appellant]: I think we're a little premature. I have not raised the issue of self-defense yet because opening

4

statement is not evidence. There's actually no evidence at this time of self-defense. I do anticipate, in all candor, that we will raise the evidence of self-defense and I don't know whether or not they are going to get into what [the investigator] and my client—but we certainly intend to get into that.

. . . .

THE COURT: So, go ahead, [counsel for the State]. I'm denying the motion for mistrial.

Shortly thereafter, the State questioned Jones, over appellant's running objection, about an encounter he had with appellant regarding the stolen pistol. Jones testified that he believed that the altercation arose because appellant suspected that Jones turned him in for possessing the stolen pistol.

At the conclusion of the trial, the jury convicted appellant of the offense and assessed punishment at ten years' confinement with $316 in court costs. The trial court accepted the jury's verdict and made an additional finding that the evidence established that appellant had used or exhibited a deadly weapon—a beer bottle—in committing the underlying offense. *See id.* § 22.02(a)(2). This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2007); *Salazar v. State*, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001). A trial court's decision will be upheld unless it lies outside the "zone of reasonable disagreement." *Oprean*, 201 S.W.3d at 726.

5

## III. ANALYSIS

In his sole issue on appeal, appellant asserts that the trial court abused its discretion in admitting evidence of extraneous conduct engaged in by appellant—specifically, his prior theft of a firearm. The State counters by arguing that: (1) appellant opened the door to the admission of extraneous-offense evidence when he made a self-defense argument in his opening statement; (2) the State's evidence proved beyond a reasonable doubt that appellant committed the extraneous offense of theft of a pistol; (3) evidence of the extraneous offense established appellant's motive for attacking Jones; and (4) the probative value of the evidence outweighed any prejudicial effect.

### A. Admissibility of Extraneous-Offense Evidence

It is a fundamental principal of American jurisprudence that defendants must only be tried for the crimes for which they have been charged, not other disconnected crimes. *Turner v. State*, 754 S.W.2d 668, 671 (Tex. Crim. App. 1988) (citing *Young v. State*, 159 Tex. Crim. 164, 261 S.W.2d 836, 837 (Tex. Crim. App. 1953)). Therefore, to avoid undue prejudice to defendants, the circumstances under which we permit evidence of extraneous offenses at trial are limited. *See* TEX. R. EVID. 404(b) (providing that evidence of other crimes, wrongs, or bad acts may be admissible for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident); *see also Tamez v. State*, 48 S.W.3d 295, 296 (Tex. App.–San Antonio 2001, no pet.) (holding that the prohibition on the use of extraneous-offense evidence is a "basic tenet of our criminal justice system") (quoting *Smith v. State*, 12 S.W.3d 149, 152 (Tex. App.–El Paso 2000, pet. ref'd)).

6

Appellant argues that the jury heard evidence of a prior offense involving a stolen pistol and that the admission of this evidence violated Texas Rules of Evidence 104(b), 403, and 404(b). *See* TEX. R. EVID. 104(b), 403, 404(b). In determining whether the trial court abused its discretion in admitting this evidence, we must assess whether: (1) the State proved appellant's involvement in the extraneous offense was probable beyond a reasonable doubt, *see id.* at R. 104(b); (2) the evidence was properly admitted under an exception to the general prohibition against evidence of extraneous bad acts, *see id.* at R. 404(b); and (3) the probative value of the evidence outweighed any unfair prejudice to appellant. *See id.* at R. 403.

**B. Texas Rule of Evidence 104(b)**

For evidence of appellant's extraneous offense to be permitted at trial, the State was required to demonstrate beyond a reasonable doubt that appellant committed the offense. *See id.* at R. 104(b) ("When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."); *Ex parte Varelas*, 45 S.W.3d 627, 630-31 (Tex. Crim. App. 2001).

Jones testified that, on one evening, appellant showed Jones a pistol that appellant had stolen. Jones recalled that appellant intended to sell the pistol to another individual in exchange for cash and marihuana. Jones further testified that appellant stole the pistol from a house that was situated behind Jones's trailer. After Jones testified, written statements made by Jones and appellant to law enforcement referencing the extraneous

offense were admitted into evidence.[3]  *See Fuller v. State*, 829 S.W.2d 191, 197 (Tex. Crim. App. 1992) (holding that under rule 104(b), evidence should not be excluded merely because its relevance may depend upon the production of additional evidence at a later point in the trial).  The first exhibit, labeled State's exhibit 21, was a voluntary statement given by appellant on August 6, 2008, to Goliad County Sheriff's Department officials, in which appellant admitted that "[he] had been in jail on charges of theft of a firearm."  The second exhibit, labeled Defendant's exhibit 14, was a voluntary statement given by Jones, in which Jones stated that "[appellant] then told me he was looking for James, and began asking me why James and I had snitched him off.  I asked him what he was talking about, and told him that I had warned him that the gun was going to get him in trouble anyway."  Having reviewed the record, we conclude that the State proved that appellant's involvement in the extraneous offense was probable beyond a reasonable doubt.  *See* TEX. R. EVID. 104(b); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (permitting inferences by fact finders as long as each inference is supported by the evidence at trial).

## C. Texas Rule of Evidence 404(b)

Although the extraneous-offense evidence against appellant met the requirements of rule 104(b), it must also meet the requirements of rule 404(b), or it must rebut a defensive theory in order to be admissible.  *See* TEX. R. EVID. 404(b); *see also Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) ("Extraneous-offense evidence is not inadmissible under Rule 404(b) when it is offered to rebut an affirmative defense or a

---

[3] Appellant did not object to the admission of either of the written statements.  We note that Texas courts have held that "[t]he admission of inadmissible evidence can be rendered harmless if the same or similar evidence is introduced without objection elsewhere during trial."  *Elder v. State*, 132 S.W.3d 20, 27 (Tex. App.–Fort Worth 2004, pet. ref'd) (citing *Willis v. State*, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989); Brodrick v. State, 35 S.W.3d 67, 75 (Tex. App.–Texarkana 2000, pet. ref'd)).

8

defensive issue that negates one of the elements of the crime."). The evidence of appellant's extraneous offense of theft of a firearm was admissible because it rebutted appellant's self-defense theory and proved a motive for the altercation.

In his opening statement, appellant stated that he intended to present evidence to support a self-defense theory.[4] Appellant argues that the State improperly attempted to refute his self-defense theory prior to his presentation of evidence supporting such a theory. However, the court of criminal appeals has recently held that "a defense opening statement . . . opens the door to the admission of extraneous-offense evidence . . . to rebut the defensive theory presented in the defense opening statement." *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (citing *Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005); *Powell v. State*, 63 S.W.3d 435, 438-40 (Tex. Crim. App. 2001)). Specifically, the *Bass* court noted that:

> [a]lthough a defensive opening statement is not itself evidence, it does inform the jury of "the nature of the defense relied upon and the facts expected to be proved in their support." When, as here, the defense chooses to make its opening statement immediately after the State's opening statement, the State may reasonably rely on this defensive opening statement as to what evidence the defense intends to present and rebut this anticipated defensive evidence during its case-in-chief as opposed to waiting until rebuttal.

*Id.* at 563 n.7 (citations omitted). Therefore, the mere mentioning of the self-defense theory in appellant's opening statement "open[ed] the door to the admission of extraneous-offense evidence . . . to rebut the defensive theory presented in the defense opening statement." *Id.* at 563.

---

[4] In his voluntary statement, appellant stated that he attacked Jones with the broken beer bottle after Jones allegedly punched him in the face, hit him on the head with a stick several times, and brandished a pocket knife.

To rebut appellant's self-defense theory, the State questioned Jones about the day appellant showed him the pistol. Jones stated that after appellant showed him the pistol, he warned appellant that "you're going to get your ass in some shit." However, appellant ignored Jones's warning and emphasized that he was just going to "switch it off." Later, appellant was arrested for theft of the pistol, and he served some time in jail for the offense. Upon release from jail, appellant sought out Jones to find out why he had "snitched" on him. Jones testified that when he denied knowing anything about the situation, appellant attacked him.

It is clear that the extraneous-offense evidence was offered to negate appellant's theory that Jones was the first aggressor and establish that appellant intentionally attacked Jones because appellant believed that Jones had "snitched" on him. *See* TEX. R. EVID. 404(b); *see also Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972) ("[M]otive refers to an emotion that would provoke or lead to the commission of a criminal offense. Evidence to show motive is the circumstantial evidence that would appear to cause or produce the emotion."). We therefore conclude that the extraneous-offense evidence was admissible to rebut appellant's self-defense theory and to prove appellant's motive for attacking Jones. *See* TEX. R. EVID. 404(b).

**D. Texas Rule of Evidence 403**

Finally, we do not believe the trial court abused its discretion in concluding that the probative value of the extraneous-offense evidence substantially outweighed the danger of unfair prejudice to appellant. *See id.* at R. 403. "Unfair prejudice" does not arise from the mere fact that the evidence injures a party's case, because virtually all evidence that

a party offers will be prejudicial to the opponent's case. *Casey*, 215 S.W.3d at 883. Evidence is "unfairly prejudicial" when it tends to have some adverse effect on a defendant beyond tending to prove the fact or issue that justifies its admission. *Id.*

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). In practice, the factors in this balancing test frequently blend together. *Id.*

Applying these factors, we first note that the inherent probative force of the extraneous offense was significant because it tended to prove appellant's motive for attacking Jones, and it rebutted appellant's self-defense theory. *See Casey*, 215 S.W.3d at 882 (stating that extraneous-offense evidence was probative to dispute the central issue at trial as raised by the defense). Second, the State's need for the evidence was significant because it was the only evidence available to the State to rebut appellant's self-defense theory. *Id.* at 883-84 (noting that the probative force of the extraneous-offense evidence centered on the State's inherent inability to rebut defensive arguments).

While the evidence was certainly prejudicial, we cannot say that such prejudice was unfair. There is no indication in the record that the jury in this case was unequipped to

11

evaluate the probative force of the evidence.[5]  Because the evidence was significant, but not repetitious, it did not consume an inordinate amount of time.  Furthermore, there is nothing in the record to show that the evidence confused the jury or suggested that a decision based on an improper basis (i.e., a verdict based on the extraneous offense rather than the instant offense).

We presume that the trial court applied the same analysis in deciding to allow the extraneous-offense evidence against appellant.  *See Williams v. State*, 958 S.W.2d 186, 195-96 (Tex. Crim. App. 1997) (holding that the balancing test is presumed to have been conducted if the trial court is silent on the test).  We give great deference to the trial court's conducting of the test, and we do not believe that the probative value of the extraneous-offense evidence in this case outweighed its prejudicial nature.

Because we have concluded that the State proved appellant's involvement in the extraneous offense was probable beyond a reasonable doubt, the evidence was properly admitted to prove motive and to rebut appellant's self-defense theory, and the probative value of the evidence outweighed the unfair prejudice to appellant, we conclude that the trial court did not abuse its discretion in admitting the extraneous-offense evidence.  *See Casey*, 215 S.W.3d at 879; *see also Oprean*, 201 S.W.3d at 726.  Accordingly, we overrule appellant's sole issue.

---

[5] We note that appellant did not request that the jury be instructed to disregard Jones's statements pertaining to the stolen pistol.  In fact, the trial court offered to make a limiting instruction to the jury regarding Jones's first reference to appellant's incarceration, but appellant declined the offer.  Moreover, the record does not reflect that appellant moved the trial court to conduct a hearing outside the presence of the jury on the admissibility of the extraneous-offense evidence.

## IV. CONCLUSION

Having overruled appellant's sole issue on appeal, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b)
Memorandum Opinion delivered and
filed this the 28th day of August, 2009.

13