**Calin Mugur OPREAN, Appellant,**

v.

**The STATE of Texas.**

No. PD–0669–05.

Court of Criminal Appeals of Texas.

Sept. 13, 2006.

Edward M. Chernoff, Houston, for Appellant.

Eric Kugler, Assistant District Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, and HOLCOMB, JJ., joined.

The trial judge signed a pre-trial order, requiring that at least ten days before trial, the prosecutor give Oprean's counsel all videos containing Oprean's voice. Immediately before the trial's punishment phase, Oprean's attorney learned that the prosecutor had such a video. The prosecutor, over Oprean's objection, introduced it into evidence. We must decide whether, under the particular facts of this case, the judge erred in admitting the tape. We hold that he did.

## FACTS

On February 25, 2004, Judge Don Stricklin signed a document entitled "Discovery Order," directing the State "to furnish the items ordered for inspection and copying on or before ten (10) days prior to trial." Those items included, among other things, "[a]ll video and tape recordings that contain the defendant's voice." It is undisputed that no such items were produced before trial.

Oprean's felony DWI jury trial began on April 12, 2004. After hearing evidence and deliberating, the jury found Oprean guilty on April 14 and was recessed for the day.

That evening, Oprean's attorney asked the trial prosecutor what evidence she intended to present on the punishment issue the next morning. She replied that she intended to present only the "judgments and sentences" in Oprean's prior convictions.

Just minutes before the punishment phase began, defense counsel learned that the prosecutor was going to offer a videotape depicting one of Oprean's previous offenses into evidence. The prosecutor informed defense counsel of her intent to offer the video only after defense counsel inquired about the presence of a police officer in the courtroom, who he assumed was present for another case. The prosecutor informed the trial judge and defense counsel that the officer was there to "testify that the video is a fair and accurate depiction."

Outside the presence of the jury, defense counsel objected to the admission of the video, pointing out to the judge that the prosecutor had violated the discovery order by failing to allow the defense ten days to inspect the video and relating the conversation he had with the prosecutor the previous evening. The prosecutor replied that "there was no [Article 37.07(g) ] charge in this Court's discovery order and no [37.07] request was ever made by defense counsel, which is required to be made to me to give him this evidence." The trial judge overruled defense counsel's objection to the tape's admission.

Defense counsel then asked the judge to grant a recess so that he could inspect the video and prepare his strategy, but the judge summarily denied his request. The tape was introduced before the jury, and the jury assessed Oprean's punishment at five years' imprisonment and a $5,000 fine.

Oprean appealed, and the First Court of Appeals affirmed his conviction.[1] The

1. *Oprean v. State*, No. 01–00461–CR, 2005 WL 568291 (Tex.App.-Houston [1st Dist.] 2005)

court of appeals determined that it could not "conclude that the State's article 37.07, section 3(g) explanation is meritless on it face."[2] As a result, the court stated: "the record does not demonstrate that the State acted with specific intent to willfully disobey the discovery order. We hold that the trial judge did not abuse its discretion in admitting the videotape."[3] We granted Oprean's petition for discretionary review to decide whether the Court of Appeals erred in upholding the trial judge's decision to admit the video over Oprean's objection.[4]

## LAW AND ANALYSIS

▮ "Evidence willfully withheld from disclosure under a discovery order should be excluded from evidence."[5] When reviewing a trial judge's decision to admit or exclude evidence, an appellate court must determine whether the judge's decision was an abuse of discretion.[6] Unless the trial judge's decision was outside the "zone of reasonable disagreement," an appellate court should uphold the ruling.[7] When a trial judge makes findings of fact "based on an evaluation of credibility and demeanor," an "appellate court should show almost total deference" to those findings.[8] And when the trial judge fails to enter written or oral findings of fact, an appel-

late court will "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record."[9]

In *State v. LaRue*, our most recent case addressing whether the State's violation of a discovery order was willful, LaRue sought to prevent the State from introducing its DNA evidence because the State failed to comply with the discovery order by disclosing the evidence in an untimely manner.[10] The trial judge agreed with LaRue, and ruled that the DNA evidence should be excluded.[11] The court of appeals reversed the trial judge's decision, and we affirmed.[12] In doing so, we reviewed three situations cited by the trial judge as evidence of willful conduct by the State.[13]

In the first situation, the prosecutor failed to comply with the discovery order because he was told that LaRue's case was going to be reassigned to another prosecutor.[14] The trial judge found that the prosecutor's failure to turn over the DNA evidence "constituted a 'willful choice.'"[15] We concluded that although the inaction of the prosecutor was "'willful' ... with respect to the conduct itself," there was "no evidence in the record that, by his choice,

(not designated for publication).

2. *Id.* at 10.

3. *Id.* at 10–11.

4. *In re Oprean*, No. PD–0669–05 (Tex.Crim. App. July 27, 2005).

5. *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex.Crim.App.1978).

6. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim.App.1993).

7. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991).

8. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

9. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim. App.2000).

10. 152 S.W.3d 95, 96 (Tex.Crim.App.2004).

11. *Id.*

12. *Id.* at 96–97.

13. *Id.* at 97.

14. *Id.*

15. *Id.*

he intended to violate the order or harm the defense." [16]

In the second situation, defense counsel spoke with the prosecutor about discovery, telling him that he needed the evidence immediately and that he would be going out of town.[17] The prosecutor faxed the discovery materials to defense counsel the day he left town.[18] The trial judge found the prosecutor's conduct to be " 'gamesmanship at the expense of defendant's constitutional right to a fair trial.' " [19] We disagreed, concluding that it is unreasonable to infer that the timing of the fax "was a strategic and purposeful effort to thwart the defense in its preparation of its case." [20]

In the final circumstance, the prosecutor objected to the trial judge's proposal to grant a continuance.[21] According to the trial judge, the State's decision to "exclude any lesser remedy demonstrates the willfulness of the conduct in withholding the evidence . . . ." [22] Disagreeing with the trial judge's findings, we stated that the prosecutor's objection "was in no way relevant to the nature of the State's conduct when it violated the discovery order." [23] Based on the foregoing, we held that "there is no evidence that the prosecutor in this case acted with the specific purpose of disobeying the court's discovery order. . . ." [24]

In this case we must determine whether the prosecutor acted with the specific intent to willfully disobey the discovery order by failing to turn over the videotape from Oprean's prior 2002 DWI conviction to the defense. We conclude that she did.

It should be noted at the outset that a visiting judge handled the punishment phase and the hearing immediately preceding it, so he may not have been aware of the pretrial order at issue before Oprean's lawyer called it to his attention. Nevertheless, the order was part of the record before him. And the order unambiguously directed the State to disclose ten days before trial the very item introduced into evidence. The plain wording of the order is clear to anyone who can read.

Two things are particularly unacceptable about the prosecutor's conduct. First, the prosecutor told defense counsel the night before the punishment phase began that she intended to introduce only the judgments and sentences from the previous convictions. She did not dispute the fact that she made that statement. There is no suggestion that later that night or early the next morning she suddenly discovered the videotape's existence. And because her signature appears at the end of the discovery order, it cannot be said that she was unaware of it.

Second, when defense counsel argued that he had not received notice as required by the discovery order, the prosecutor responded by stating that "there was no [37.07] charge in [the] Court's discovery order." When affirming the judgment of the trial court, the Court of Appeals relied on the prosecutor's explanation.[25] The

16. *Id.*

17. *Id.* at 97–98.

18. *Id.* at 98.

19. *Id.*

20. *Id.*

21. *Id.* at 98–99.

22. *Id.* at 99.

23. *Id.*

24. *Id.*

25. *Oprean,* 01–00461–CR at 10.

court found the explanation was not "meritless on its face" and concluded that "[i]n light of the State's explanation, and regardless of an ultimate determination of its validity, the record does not demonstrate that the State acted with specific intent to willfully disobey the discovery order."[26] But the validity of the explanation offered by the prosecutor is a relevant factor that should be considered when determining willfulness. The discovery order did not mention anything about Article 37.07, and therefore was not limited by that provision. Because the prosecutor knew about the discovery order and chose to invoke Article 37.07 after counsel called her attention to the order, she made a conscious decision to violate the plain directive of the discovery order.

Affording total deference to the trial judge's implicit findings of fact that are supported by the record, we find that the trial judge abused his discretion in admitting the videotape over defense counsel's objection. The record reveals that, unlike the prosecutor in *LaRue*, the prosecutor's conduct here was a calculated effort to frustrate the defense. Because intent is inferred from acts done and words spoken, we have considered the prosecutor's statements and actions in finding her conduct to be willful.

## CONCLUSION

The judgment of the Court of Appeals is reversed, and the case is remanded to that court to determine what harm, if any, was caused by the videotape's admission into evidence during the punishment phase of Oprean's trial.

COCHRAN, J., filed a concurring opinion in which KELLER, P.J., joined.

COCHRAN, J., filed a concurring opinion in which KELLER, P.J., joined.

I join in the Court's judgment, but I cannot join the majority opinion which concludes that the prosecutor "willfully" violated a discovery order.

This record certainly would support a factual finding that the prosecutor acted "with the specific intent to willfully disobey the discovery order by failing to turn over the videotape from Oprean's prior 2002 DWI conviction to the defense."[1] Had the trial court made such a finding, I would agree with it. But the trial court did not so rule. Instead, the trial court's ruling is an implicit finding that the prosecutor did not willfully violate the discovery order. I cannot conclude that the trial court was clearly erroneous in making that implicit factual finding.

However, I agree with the majority that the trial court did, under the particular facts of this case, err in admitting the videotape[2] without granting the defense a recess to prepare to meet this unexpected, unreviewed evidence.

Texas statutes do not require much pretrial discovery of either the State or defense evidence. However, article 39.14 of the Code of Criminal Procedure does give the defendant, upon a showing of good cause, the right to require the State to produce any written statements made by the defendant and any photographs or other tangible items in the State's possession that are material to the case.[3] Appellant exercised this right with his written discovery request which the trial court granted. The State did not comply with it. It failed to produce the videotape of the de-

---

**26.** *Id.*

**1.** Majority Op. at 727.

**2.** Majority Op. at 725.

**3.** Tex.Code Crim. Proc. art. 39.14(a).

fendant's prior DWI arrest at least ten days before the trial. There is no statutory sanction for the violation of a clear and explicit discovery order, but a discovery order is not worth the paper that it is written on if there is no consequence for violating it.

I agree, however, with the court of appeals's statement that "[v]iolation of a discovery order does not automatically require reversal."[4] Obviously there are occasions in which the State will show good cause for being unable to timely comply with a discovery order or will have some good-faith explanation for why it did not timely comply. In this case, for example, the prosecutor explained that she did not think the discovery order covered any testimony or exhibits that she intended to offer during the punishment phase. As the majority correctly points out, the discovery order is not so limited. Nonetheless, the court of appeals concluded that the prosecutor's explanation was not "meritless on its face."[5] That explanation may pass "the red face test" and support a conclusion that the State did not *willfully* violate a discovery order. But a lack of willfulness does not itself render the undisclosed evidence automatically admissible either. We implied as much in our recent decision in *State v. LaRue*,[6] in which we stated:

> The trial court erred by finding that the State acted willfully in its noncompliance with the discovery order and by excluding the DNA evidence. The court of

appeals' holding on this issue is correct. The court of appeals also concluded that "under the circumstances in this case, the appropriate solution to the discovery dispute was a continuance of the trial." Because the trial court's ultimate findings characterized the State's conduct as willful, and as neither party presents argument regarding what remedies are available when the State's conduct is of a less culpable nature, we express no opinion as to what alternative sanction the trial court should have imposed.[7]

I am, however, less concerned with "sanctions" against the State for discovery violations than I am with the defendant's due process rights to adequate notice.[8] In this particular case, I agree that the trial court abused its discretion in admitting the videotape in violation of the discovery order without also ensuring the defendant's right to due process notice.

Each case must, of course, be examined on its own merits, but here the defendant made a very persuasive showing in the trial court that he was actually "surprised" by the sudden appearance of this scene videotape from an earlier DWI. He should have been given at least a "recess" to view that videotape, discuss that evidence with his client, and formulate a defensive strategy. Defense counsel was affirmatively (though perhaps innocently) misled by the prosecutor into believing that the only evidence that the State would offer about his client's prior DWI conviction would be the written judgment. Counsel devised his

---

**4.** *Oprean v. State*, No. 01–00461–CR, 2005 WL 568291, at \*2, 2005 Tex.App. LEXIS 1895 \*5 (Tex.App.-Houston [1st Dist.] 2005) (not designated for publication).

**5.** *Id.* 2005 WL 568291, at \*5, 2005 Tex.App. LEXIS 1895, at \*13.

**6.** 152 S.W.3d 95 (Tex.Crim.App.2004).

**7.** *Id.* at 99–100.

**8.** *See id.* at 100 (Cochran, J., concurring) ("Had the defendant shown that he was unable to prepare a defense to this scientific evidence in the time remaining before trial, I would be less concerned about the 'willfulness' of the prosecutor and more concerned about the due process rights of the defendant").

punishment stage strategy with this promise in mind. Indeed, the prosecutor did not even have the common courtesy[9] to tell him about the existence of the videotape and its sponsoring witness on the morning of the punishment hearing. Defense counsel fortuitously discovered it moments before the punishment phase began. He had not known of its existence; he had not viewed it; he had relied upon the fact that the State told him that it was not offering any evidence except the written judgment. His claim of "surprise" is not only plausible, it is compelling. Under these circumstances, the trial judge had the discretion to do one of two things: (1) exclude the videotape because it had not been produced in a timely manner to allow the defense to see it and digest its import before the punishment phase started;[10] or (2) declare a short recess for the defense (and the trial judge) to view the videotape and prepare for the State's offer.

In this case, the defense requested, as an alternative to excluding the videotape, a one-day recess.[11] An entire day might not be necessary to assure sufficient notice to the defense of the contents and import of this evidence, but a short delay of an hour or two comports with both the defendant's right to due process notice and the court's interest in the orderly administration of justice. The punishment phase in this case began at 11:54 a.m., a time that many might consider suitable for a lunch hour recess.

Of course it is not always reversible (*i.e.*, harmful) error for the trial judge to refuse to exclude the evidence or grant a short recess, but I agree with the majority that the trial court committed error in this particular case and join in the remand order.

---

9. Common courtesy, though not a legal requirement, will oft-times ameliorate an otherwise dubious legal position.

10. *See Lindley v. State*, 635 S.W.2d 541, 543–44 (Tex.Crim.App.1982) (holding that "where the trial court grants a motion for discovery, and the prosecution fails to disclose that evidence ordered disclosed by the trial court, then the evidence should not be admitted, if it is offered into evidence by the State during the trial[,]" but also noting that "the failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise"). Thus, the trial court may always exclude the undisclosed evidence, but if he does not, any error in causing "surprise" to the defense is forfeited on appeal unless the defendant has also requested a postponement or recess.

11. The State argued, and the court of appeals agreed, that appellant was not entitled to a "continuance" because he did not file a sworn, written motion for continuance. *Oprean*, 2005 WL 568291, at *5, 2005 Tex. App. LEXIS 1898 at *13 n. 4. Well, of course not. If appellant had known about the videotape in sufficient time to draft a sworn written motion, he would not have been actually surprised and needed a mid-trial recess in the first place. As Professor Dix notes, the request for a short, mid-trial recess is "beyond the scope of chapter 29 of the Code of Criminal Procedure and invoke[s] the equitable powers of the court." GEORGE E. DIX AND ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 28.76, at 540 (2nd ed.2001). An oral motion for delay, coupled with a thorough explanation for its necessity, is precisely what is called for when either the State or defense is understandably "surprised" during the middle of trial by some event that was not, and could not have been, anticipated, and for which that party is blameless. In such a case, the trial judge's denial of such a request is reviewed for abuse of discretion. *Id.* at 540–42 (collecting cases). In these situations, the trial court should balance the asserted need for the recess, its length, and its impact upon the orderly administration of justice.