Opinion issued March 1, 2007






 








In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00461-CR






CALIN MUGUR OPREAN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 337th District Court 

Harris County, Texas

Trial Court Cause No. 965394






O P I N I O N


 A jury found appellant, Calin Mugur Oprean, guilty of the third-degree felony
offense of driving while intoxicated ("DWI") and assessed punishment at five years'
confinement and a $5,000 fine. (1) This Court affirmed the trial court's judgment on
original submission. See Oprean v. State, No. 01-04-00461-CR, 2005 WL 568291,
at * 5 (Tex. App.--Houston [1st Dist.] Mar. 10, 2005, pet. granted) (mem. op.; not
designated for publication). On appellant's petition for discretionary review, the
Texas Court of Criminal Appeals reversed this Court's judgment and remanded the
cause for this Court to determine what harm, if any, was caused by the admission of
a videotape during the punishment phase. Oprean v. State, 201 S.W.3d 724, 728
(Tex. Crim. App. 2006).

 After conducting the harm analysis, we reverse the trial court's judgment as to
punishment and remand for a new punishment hearing.

Background


 In its indictment, the State alleged that appellant was driving while intoxicated
on October 19, 2003. Elevating the offense to a third-degree felony, the indictment
also listed two prior DWI convictions: one from 1999 and one from 2002. Pretrial,
the defense requested and the trial court signed a discovery order, which, in relevant
part, ordered the State to furnish "all videos and tape recordings that contain the
defendant's voice" to the defense "(10) ten days prior to trial." 

 At the end of the guilt-innocence phase, the jury found appellant guilty as
charged in the indictment. The evening before the punishment phase was to begin,
the prosecutor told defense counsel that she would introduce the judgments and
sentences from the 1999 and 2002 DWI convictions. She made no indication that any
other evidence relating to the prior DWI's would be introduced. 

 The next morning, immediately before the punishment phase began, defense
counsel noticed a police officer in the courtroom, who was not associated with the
case. Upon questioning the prosecutor about the officer, the defense, for the first
time, learned that the State intended to introduce the scene video from appellant's
2002 DWI conviction. The prosecutor explained that the police officer was the
sponsoring witness for the video. The video, shot from the patrol car of the arresting
police officer, showed the officer following appellant's car, the officer pulling
appellant's car over, appellant taking the field sobriety tests, and the officer arresting
appellant for DWI. 

 At the beginning of the punishment phase, the defense objected to the
introduction of videotape and the sponsoring officer's testimony, arguing, inter alia,
that the State had violated the discovery order. The prosecutor responded that she
believed the discovery order did not require disclosure because it covered only
witness testimony during the State's case in chief and because the order contained "no
[Code of Criminal Procedure article 37.07(g)] charge," nor had the defense made an
article 37.07 request. 

 The trial court denied the defense's objection to the videotape and to the
officer's testimony. Defense counsel then requested a one-day continuance to view
the videotape and prepare his trial strategy. Defense counsel told the trial court that
he was surprised by the videotape, particularly in light of the prosecutor's comments
made the night before indicating that the State's only evidence would be the two
earlier judgments and sentences. Defense counsel explained to the trial court that he
had been in the courtroom with the prosecutor a couple of hours that morning waiting
for the punishment hearing to begin and had not learned of the video. Rather, the
prosecutor told defense counsel about the video only minutes before the punishment
hearing when he questioned her about the officer's presence. Despite defense
counsel's claim of surprise, the trial court denied the request for a continuance. 

 This Court affirmed the conviction on original submission concluding that the
prosecutor had not willfully violated the discovery order, as claimed by appellant. 
See Oprean, 2005 WL 568291, at *5. On appellant's petition for discretionary
review, the court of criminal appeals held that the trial court abused its discretion by
admitting the videotape because the prosecutor had willfully violated the discovery
order. Oprean, 201 S.W.3d at 728. As a result, the court of criminal appeals reversed
this Court's judgment and remanded the cause for this Court to determine what harm,
if any, was caused by the admission of the videotape during the punishment phase. 
Id.

Harm Analysis


 We disregard error in the admission of evidence unless it affects the
defendant's substantial rights. See Tex. R. App. 44.2(b). A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997). 

 In this case, the question arises how to apply this standard. Here, appellant did
not complain on appeal that the videotape was substantively inadmissible, rather, he
complained, as he had in the trial court, that the videotape should not have been
admitted because the State did not comply with the discovery order. Thus, the harm
that we review is the harm caused by the State's violation of the discovery order. See
McDonald v. State, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) (reviewing only
harm caused by lack of Rule of Evidence 404(b) notice because appellant objected
only to lack of notice, not to admissibility of evidence). In so doing, we take into
consideration the intended purpose of the discovery order: to prevent surprise and to
permit appellant to prepare an adequate defense. See Hernandez v. State, 176 S.W.3d
821, 825 (Tex. Crim. App. 2005) (concluding that purpose of Rule 404(b) notice
provision of preventing surprise is valid consideration in conducting Rule 44.2(b)
harm analysis); see also Ford v. State, 73 S.W.3d 923, 926 (Tex. Crim. App. 2002)
(focusing on purpose of violated jury-shuffle statute in conducting Rule 44.2(b) harm
analysis). Practically speaking, we must analyze how the State's failure to comply
with the discovery order affected appellant's ability to prepare for the videotape and
to formulate his defense strategy. See Hernandez, 176 S.W.3d at 825-26 (analyzing
how State's failure to provide Rule 404(b) notice of various extraneous offenses
offered by State and admitted by trial court affected appellant's ability to prepare for
offer of extraneous offenses); see also Jackson v. State, 17 S.W.3d 664, 673 (Tex.
Crim. App. 2000) (considering whether defense had opportunity to review offending
evidence and to cross-examine sponsoring witness in determining whether appellant
was prejudiced by evidence admitted in violation of discovery order). 

 In this case, the defense's "claim of 'surprise' is not only plausible, it is
compelling." Oprean, 201 S.W.3d at 730 (Cochran, J., concurring). The defense had
no opportunity to view the videotape before the punishment phase began, nor did the
defense even know of the videotape's existence. The videotape showed appellant in
an obviously intoxicated state, unable to perform the field sobriety tests. 

 The defense did not learn of the videotape until minutes before the punishment
phase began. The prosecutor's affirmative statements the night before lulled the
defense into believing that the only evidence the State planned to offer were the
judgments and sentences from the two earlier DWI convictions. Undoubtedly (and
rightfully), the defense relied on such representation when developing its defensive
strategy for the punishment phase. The defense's request for a continuance to view
the videotape was denied by the trial court, despite its argument that the videotape
was a complete "surprise," which left it unprepared. The defense, the jury, and the
trial court all viewed the videotape for the first time together as it was published to
the jury. 

 As a result, defense counsel had no opportunity to determine the import of the
video, to craft a meaningful cross-examination of the sponsoring witness, to develop
a defensive strategy to ameliorate the effect of the videotape, to consult with his
client, or to offer mitigating evidence. (2) Given these circumstances, the record shows
that the defense was surprised by the videotape and denied its right to mount a
defense against it. 

 The videotape was also harmful from the standpoint that it was the only scene
video admitted at trial, depicts appellant in an obviously intoxicated state, and was
emphasized by the State during closing argument. Specifically, during summation
at the punishment phase, the prosecutor argued to the jury, 

 The video that you saw, yes, he pled guilty to that. Yes, he did. But
what does that show you? It shows you what kind of condition--'cause
we didn't have a video in this case. It shows you what kind of condition
he's out there driving on the streets with the citizens of Harris County.

 He's driving on the streets. You can watch [the video] again if
you want.

The prosecutor then remarked on what was depicted in the videotape and told the
jury, "That's why I showed you. You need to see what condition he's out there
driving in. It's dangerous. It kills--DWI kills thousands of people."

 The State points out that other evidence admitted at trial established that
appellant had four earlier DWI's for which he received either probation or minimal
jail time and had crashed his car into a cement barricade in the course of committing
the most recent DWI offense. Although the jury likely considered it in assessing
punishment, this evidence does not necessarily dilute the effect that the erroneously
admitted videotape had on the jury's verdict. Indeed, "the powerful impact of
videotape on jurors has been recognized." In re S.P., 168 S.W.3d 197, 210 (Tex.
App.--Dallas 2005, no pet.) (citing Ochs v. Martinez, 789 S.W.2d 949, 956 (Tex.
App.--San Antonio 1990, writ denied) (noting that videotape "makes a more lasting
and intense impression on jurors than other forms of proof")). Moreover, the
videotape's effect on the jury's verdict was undoubtedly heightened in this case by
the defense's inability to defend against it in any way due to the State's violation of
the discovery order.

 For these reasons, we conclude that the admission of the videotape had a
substantial and injurious effect or influence in determining the jury's verdict, i.e,
appellant's sentence. See Tex. R. App. P. 44.2(b); King, 953 S.W.2d at 271. 
Accordingly, we hold that appellant was harmed by the admission of the videotape.
Conclusion


 We reverse the trial court's judgment as to punishment only and remand for a
new punishment hearing.





 Laura Carter Higley

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.


Publish. Tex. R. App. P. 47.2(b).
1. See Tex. Pen. Code Ann. § 49.04(a) (Vernon 2003), Tex. Pen. Code Ann.
§ 49.09(b)(2) (Vernon Supp. 2006).
2. Defense counsel's surprise and unpreparedness may have been exacerbated by the fact
that no scene video was introduced for the most recent DWI, which triggered the
third-degree felony charge. Thus, the defense had no reason to integrate challenges
to scene videos into its trial strategy either generally or specifically.