Opinion issued October 29,
2009                                                                 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00557-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



HORACE HIAWATHAI WALKER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 284th District Court

Montgomery County, Texas

Trial Court Cause No. 07-09-09271-CR

 

 



O P I N I O N

          A jury convicted Horace
Hiawathai Walker for felony driving while intoxicated, third offense or more.  See
Tex. Penal Code Ann. § 49.04
(Vernon 2003).  Walker pleaded true to three enhancement paragraphs and the
trial court assessed punishment at twenty-five years’ confinement.  On appeal,
Walker contends the trial court erred in admitting a DVD containing an audio recording
of an inculpatory statement produced by the State during the trial.  We hold
that the trial court did not err in admitting the recording and therefore affirm
the judgment of the trial court.

Background

During the evening of July 21, 2007, Texas
Department of Public Safety Trooper R. Wolf conducted a traffic stop on
Interstate 45 in Montgomery County.  While walking from his patrol car to the
stopped vehicle, Trooper Wolf noticed a car, driven by Walker, make a drastic
lane change from the “fast” lane of traffic into the lane closest to Wolf.  Wolf
signaled with his flashlight for Walker to either move back into the fast lane
or slow down.  Just as Walker’s vehicle reached Wolf, Walker swerved back into
the fast lane, forcing another vehicle off the road and onto the opposite
shoulder.  Suspecting that Walker might be intoxicated, Trooper Wolf released
the individual he previously stopped, caught up to Walker’s vehicle, and pulled
him over.

After stopping Walker, Trooper Wolf
asked Walker to spell his middle name, which he accomplished only after two
unsuccessful attempts.  Wolf smelled a strong odor of alcohol on Walker’s
breath and saw that Walker’s eyes were red and glassy.  Walker submitted to a
portable breath test, which indicated the presence of alcohol in his system.  Wolf
then administered the three standardized field sobriety tests.  Walker
displayed all six possible clues on the horizontal gaze nystagmus test, six of
eight possible clues on the walk and turn test, and three of four possible clues
on the one leg stand test.  At this point, Wolf placed Walker under arrest,
read Walker his Miranda rights, and requested a breath specimen.  Walker
refused, saying that it “was not going to help [Walker] any, it was going to help
[Wolf].”

The State indicted Walker for felony
driving while intoxicated, third offense or more, on September 13, 2007.  On
October 18, the trial court entered a discovery order, requiring the State to
produce, among other things, “[a]ll written or recorded statements, including
video tape recordings, of the defendant, along with all confessions or
statements, whether verbal or otherwise, made pursuant to Art. 38.22 [Code of
Criminal Procedure].”  The State produced a DVD recording to defense counsel of
Walker’s traffic stop.  During trial the following April, the trial judge
admitted the DVD recording of Walker’s traffic stop, captured by the video
camera and audio equipment located in Trooper Wolf’s patrol car.  While the
video played for the jury, the prosecutor asked Wolf to identify the “M-1” and
“M-2” notations that appeared on the television screen.  Wolf stated that these
notations referred to two microphones:  the M-1 microphone was located inside
the patrol car and Wolf wore the M-2 microphone attached to his uniform.  Wolf
also explained that the ability to hear both audio feeds depended on whether
the television system was configured for two different speakers.  If not, the
audio from the M-2 microphone would override the audio from the weaker M-1
microphone inside the patrol car, and the M-1 feed would be inaudible.  Toward
the end of the video, after Wolf placed Walker in the patrol car and attempted
to identify the passengers in Walker’s vehicle, the video showed one of the
passengers walk over to Walker and the two men having a conversation that was
inaudible on the DVD.  Wolf suggested the problem was the configuration of the
television, which did not appear equipped to play both audio feeds
simultaneously.

After finishing Wolf’s direct
examination and returning from the lunch recess, the prosecutor informed
defense counsel and the trial judge that, during Wolf’s testimony, he
discovered that the admitted DVD exhibit only contained the audio from the M-2
microphone.  The M-1 audio feed on the original DVD recording given to defense
counsel pursuant to the trial court’s discovery order was present but inaudible
due to the stronger M-2 feed and the television configuration.  The prosecutor
proposed creating a new DVD containing only the M-1 feed from the interior of
the patrol car, providing that recording to defense counsel for review and to
confirm that all previously agreed-upon redacted information was correctly redacted
from the new version, and then offering the new recording into evidence.  The
prosecutor noted that the audio of the new DVD contained a statement by Walker
to his fellow passenger sarcastically telling him to thank another passenger
for “letting [Walker] get so drunk.”  Defense counsel objected on the ground
that the prosecutor did not provide this information in a readily accessible
form during the discovery period.  At this point, the trial judge deferred
ruling on the admissibility of the new recording until after the prosecutor
provided a copy and gave defense counsel an opportunity to review it.

After cross-examination of Trooper Wolf,
the prosecution tendered a redacted version of the M-1 audio feed.  In response
to defense counsel’s statement that she had yet to hear the M-1 feed, the trial
judge proposed finishing the redirect examination of Wolf before determining
how to proceed with the new recording.  Upon finishing redirect, the court took
a twenty minute recess to allow defense counsel time to review the recording. 
When trial reconvened, the prosecution formally offered the recording of the
M-1 audio feed.  Defense counsel objected:

My one objection to this would be even though we have
agreed on the redactions and even though it was on the videotape—or the DVD
that I received prior to today’s trial and during the discovery period, I would
still object to the production of this evidence as I have not had the chance to
react to it.  And it is almost tantamount to an ambush in this case; and the
fact that it’s coming forth after the discovery period is over.

 

The prosecutor responded that the State
produced the recording during the discovery period, and:

Since counsel is aware of the contents of this
statement and was essentially provided with it—we thought the microphone didn’t
capture it.  The only development here is the microphone did capture it.  Even
if it hadn’t been captured on microphone we would have been able to call the
trooper to say he said it.

 

The prosecutor also noted that Trooper
Wolf included Walker’s statement in his offense report, which was made
available to defense counsel as part of the prosecutor’s open file policy.  The
trial court overruled defense counsel’s objection and admitted the recording.  The
jury found Walker guilty of felony driving while intoxicated, third offense or
more, and after Walker pleaded true to three enhancements related to prior DWI
and aggravated assault convictions, the trial court assessed punishment at
twenty-five years’ confinement.

Discussion

Walker contends that the trial court
erred in admitting the M-1 audio feed recording because the prosecution did not
produce this recording in a readily accessible form until trial, in violation
of the court’s discovery order.  We review a trial judge’s decision to admit or
exclude evidence for abuse of discretion.  Green v. State, 934 S.W.2d
92, 101–02 (Tex. Crim. App. 1996).  Unless the trial judge’s evidentiary
decision is outside the “zone of reasonable disagreement,” we uphold the
ruling.  Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991).  When the trial judge makes a finding of fact based on the evaluation of
credibility and demeanor, we defer to that finding.  See Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  When the trial judge does not make
explicit findings of fact, we “view the evidence in the light most favorable to
the trial court’s ruling and assume that the trial court made implicit findings
of fact that support its ruling as long as those findings are supported by the
record.”  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When the trial court admits evidence
offered by the State that was not produced in compliance with a discovery
order, the relevant inquiry is whether the prosecutor acted with the specific
intent to willfully disobey the discovery order by failing to turn over the
evidence.  Oprean v. State, 201 S.W.3d 724, 727 (Tex. Crim. App. 2006); see
also Hollowell v. State, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978)
(“[E]vidence willfully withheld from disclosure under a discovery order should
be excluded from evidence.”).  A prosecutor’s actions may be extremely
negligent or even reckless, but that conduct must rise to the level of
willfulness to require exclusion of the evidence.  See State v. LaRue,
152 S.W.3d 95, 97 (Tex. Crim. App. 2004).  We infer from the prosecutor’s
actions and words whether the prosecutor had the specific intent to willfully
disobey the discovery order.  See Oprean, 201 S.W.3d at 728.  In
determining if the prosecutor acted willfully, we consider whether the record
indicates that (1) the prosecutor intended to harm the defense, (2) the prosecutor’s
actions were a strategic and purposeful effort to thwart the defense’s
preparation of its case, or (3) the prosecutor consciously decided to violate
the plain directive of the discovery order.  See id. at 727, 728
(holding that prosecutor willfully violated discovery order when, after
specifically telling defense counsel that she would only present sentences and
judgments during the sentencing phase the next morning, she introduced video
recording of one of defendant’s prior offenses).  We also consider the validity
of the prosecutor’s rationale and explanation for violating the discovery
order, as well as whether the prosecutor suddenly discovered the evidence such
that compliance with the terms of the discovery order was impossible.  See id.
at 727–28.

The record indicates that the State
was unaware of the M-1 audio feed until Trooper Wolf pointed out the absence of
the feed during his direct examination.  When the State introduced the original
DVD recording, the prosecutor asked Wolf if the jury could hear both the audio
from his microphone and the microphone located in the patrol car.  Wolf
responded that this would be possible “[i]f the TV system is set up for two
different speakers.  Some are not.  If I have the M-2 on you will never be able
to hear the inside of the car.”  At the point in the video where Walker’s
passenger approached the patrol car to converse with Walker, Wolf again
commented on the lack of audio from the M-1 microphone, mentioning that the
television must be configured in a certain way to hear both audio feeds.  When
later discussing the problem with defense counsel and the trial judge, the
prosecutor stated that he “probably would have known how to extract [the M-1
feed] had [he] known it was there.”  This evidence does not indicate that the
prosecutor knew the M-1 audio track existed on the original DVD recording and
willfully concealed this fact from defense counsel until trial was underway.

Upon learning of the matter during
Trooper Wolf’s direct examination, the State brought it to the attention of
defense counsel and the trial court.  The State proposed making a separate DVD
recording of the M-1 feed only, providing that recording to defense counsel,
and ensuring the removal of redacted material from this new recording prior to
its introduction to the jury.  The prosecutor pointed out that defense counsel
had knowledge of the substance of the M-1 feed, since Trooper Wolf included
Walker’s comment in his offense report, which was available to defense counsel
under the open file policy.  The prosecutor promptly informed defense counsel
and the trial judge upon completion of the new recording and repeatedly
mentioned his desire for defense counsel to review the recording to check the
redactions.  These actions are not consistent with intent to harm the defense,
thwart the defense’s preparation of its case, or consciously violate the
discovery order.  Here, the trial court admitted the M-1 recording, and thus
implicitly found that the prosecution did not willfully withhold the evidence. 
The trial court also gave defense counsel an opportunity to object and make
redactions to the audio.  Finally, the State produced the substance of the
inculpatory statements in the officer’s report before the discovery deadline. 
For these reasons, we hold that the trial court did not abuse its discretion by
admitting the recording of the M-1 audio feed.[1]

Walker notes that, in her concurring
opinion in Oprean, Judge Cochran suggests that withheld evidence may be
inadmissible, even if the prosecutor does not willfully violate the discovery
order, if withholding the evidence violates the defendant’s due process right
to adequate notice.  See Oprean, 201 S.W.3d at 729 (Cochran, J.,
concurring).  She observed that allowing a short delay or recess to review the
new evidence and formulate a defensive strategy protects this right.  See
id. at 730.  Here, the trial court delayed ruling on the admissibility of
the recording until after a twenty-minute recess, which provided defense
counsel an opportunity to view the recording and prepare a defensive strategy. 
This recess, coupled with the prosecutor’s timely production of Wolf’s offense
report, which contained the statement, protected Walker’s due process right to
adequate notice.[2]

Conclusion

We hold that the trial court did not
abuse its discretion in admitting the M-1 recording.  We therefore affirm the
judgment of the trial court.

 

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Massengale.

Publish.  Tex. R. App. P. 47.2(b).









[1] Walker also contends that “[t]he recording of
Appellant in the back seat of Trooper’s Wolf’s [sic] vehicle was in fact
Article 38.22 material that was not provided until the second day of
Appellant’s trial.”  As the State notes, Article 38.22 only applies to written
or oral statements made as a result of custodial interrogation.  See Tex. Code Crim. Proc. Ann. art. 38.22,
§§ 2, 3 (Vernon 2005).  Although Walker was under arrest when he made the
relevant statements to his passenger, these statements were not made in
response to interrogation.  Trooper Wolf was not present in the vehicle at the
time.





[2]
Even if the trial court erroneously admitted the
M-1 recording, Walker must show harm to require reversal.  See Cooks v.
State, 844 S.W.2d 697, 734 n.31 (Tex. Crim. App. 1992) (citing Hollowell
v. State, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978)).  We note
that, at the time the State offered the M-1 recording, defense counsel neither
requested a recess nor moved for a continuance.  Defense counsel’s “failure to
request postponement or seek a continuance waives any error urged in an appeal
on the basis of surprise.”  Lindley v. State, 635 S.W.2d 541, 544 (Tex.
Crim. App. 1982); see also Oprean v. State, 201 S.W.3d 724, 730 n.10
(Tex. Crim. App. 2006) (Cochran, J., concurring) (“Thus, the trial court may
always exclude the undisclosed evidence, but if he does not, any error in
causing ‘surprise’ to the defense is forfeited on appeal unless the defendant
has also requested a postponement or recess.”).