

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00353-CR

The **STATE** of Texas,
Appellant

v.

Jesus P. **CARDENAS**,
Appellee

From the County Court at Law No. 13, Bexar County, Texas
Trial Court No. 359385
The Honorable Monica A. Gonzalez, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
            Sandee Bryan Marion, Justice
            Rebeca C. Martinez, Justice

Delivered and Filed:  March 6, 2013

REVERSED AND REMANDED

        The State of Texas appeals the trial court's order excluding photographs from evidence based on the trial court's conclusion that the State violated the court's discovery order. Although the trial court concluded that the State violated the court's discovery order, the court did not find the State's conduct was willful, and specifically found there was no prosecutorial misconduct. Because the record fails to establish that the State's violation was willful, we reverse the trial court's order and remand the cause for further proceedings.

**BACKGROUND**

Jesus P. Cardenas was charged with assault-bodily injury. On September 22, 2011, Cardenas filed a motion for discovery requesting the trial court to order the State to produce and permit counsel to inspect "[a]ll photographs of the complainant, whether taken at the scene of the alleged offense, at the scene where the complainant was discovered, at the hospital, or at the time of the autopsy, if any."

On November 11, 2011, the trial court held a hearing on Cardenas's motion. At the hearing, Robyn Katz and Amanda Henarie represented the State, and Tony Renteria represented Cardenas. Mr. Renteria explained to the trial court that Cardenas and the complainant had appeared in another court in which the complainant was seeking a protective order. At that hearing, the complainant stated that both she and Child Protective Services (the Texas Department of Family and Protective Services) took photographs of her injuries.

With regard to photographs allegedly taken by CPS, Ms. Henarie informed the court that the State did not have any such photographs in its possession, and argued that defense counsel had the same subpoena power as the State. The trial judge agreed, stating, "If the State has them in their possession, they are saying they don't, then you would have to subpoena [them] from CPS. That would be up to you."

With regard to photographs allegedly taken by the complainant, Ms. Henarie similarly informed the court that the State was not in possession of any such photographs and "would have to speak with the complainant to see if she has any that she has taken herself." The trial judge responded, "Okay." After further discussion, the trial judge stated, "Okay. So if your complainant has photos in her possession, then I will order that, you know, the defense is able to see those. But if you-all don't have anything and it is about CPS, then you will have to — I'm not going to get the State to order those photos for you-all from CPS."

At the conclusion of the hearing, the trial judge noted that trial was set for January 19, 2012, and asked Mr. Renteria, "how far in advance are you requesting this information?" In reference to a potential 911 recording of a call by Cardenas, Mr. Renteria stated that he would like the recording before the hearing on his motion to suppress which was set for November 17, 2011. The trial judge concluded, "Well, why don't we reset the Motion to Suppress then to give the State an opportunity to come up with their information, and we can do everything at the same time." The trial court's order stated that discovery was ordered "as indicated in the body of the motion" with the handwritten notation "specific rulings on record."

On February 13, 2012, a hearing was held regarding a subpoena issued for CPS's records. At the hearing, the State was represented by Christy Kelley and Ryan Wright, and Mr. Renteria continued to represent Cardenas. The attorney for CPS announced that certain items requested by Mr. Renteria were not discoverable, and they agreed to tender those items to the trial court for an in camera inspection. The trial court was informed that a CPS investigation was undertaken because Cardenas was holding a six-month-old baby at the time of the assault. Mr. Renteria argued that he believed the CPS records contained exculpatory evidence to prove that Cardenas was the victim, not the perpetrator, of the assault. Mr. Renteria explained that he believed any photographs taken by CPS would reveal that the complainant did not have the injuries at the time of Cardenas's arrest that she later claimed she had suffered. The State argued that the CPS records would not be relevant to determining whether the officers had probable cause to arrest Cardenas which would be the focus on the pending suppression hearing. At the conclusion of the hearing, the trial court ordered CPS to produce the records for in camera inspection.

On March 22, 2012, a hearing was held before the court on Cardenas's motion to suppress. At the hearing, the State was again represented by Ms. Kelley and Mr. Wright, and Mr. Renteria continued to represent Cardenas. The CPS records had not been produced at the

time of the hearing. Mr. Renteria also argued that a second 911 recording of Cardenas's call had not been produced; however, the State represented that they had requested all 911 recordings, and the only recording, which was of the call made by the complainant, had been turned over to Mr. Renteria. At the hearing, Mr. Renteria also referred to photographs the complainant claimed that she had taken that also had not been produced. Mr. Renteria emphasized that the injuries later claimed by the complainant, including a busted lip, were not consistent with the injuries documented by the officers at the scene. At the conclusion of the hearing, the trial court reset the motion to suppress.

On May 1 and 2, 2012, the trial court held the hearing on the motion to suppress. At the hearing, one of the arresting officers described the complainant's injuries as including bruising, but nothing on her face that he could see. The officer later stated that the complainant could have had a busted lip as a result of the assault, but he did not recall that injury. The officer admitted that the police report did not mention a busted lip. After the trial court verbally denied the motion to suppress, Mr. Wright informed the court that the State had obtained the photographs taken by the complainant around noon on that day. The photographs included pictures of various injuries to the complainant, including bruises and a busted lip. The trial judge granted a continuance to permit Mr. Renteria to review the photographs prior to trial.

On May 4, 2012, Mr. Renteria moved for the exclusion of the photographs, noting the State came into possession of the photographs before the conclusion of the hearing on the motion to suppress. Ms. Kelley responded that the State's advocate discovered that the complainant had photographs on April 19, 2012; however, the photographs were not in the State's possession until around noon on May 2, 2012. At the conclusion of the hearing, the trial court ruled that the photographs would be excluded.

On May 7, 2012, a hearing was held on the State's motion to reconsider the ruling. The trial court denied the motion to reconsider and subsequently entered amended findings of fact and conclusions of law. Among other findings, the trial court found that Mr. Wright had no personal knowledge that the photographs were required to be turned over prior to the motion to suppress hearing. The trial court also found that there was no prosecutorial misconduct.

## STANDARD OF REVIEW

"When reviewing a trial judge's decision to admit or exclude evidence, an appellate court must determine whether the judge's decision was an abuse of discretion." *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). "Unless the trial judge's decision was outside the 'zone of reasonable disagreement,' an appellate court should uphold the ruling." *Id*. "When a trial judge makes findings of fact based on an evaluation of credibility and demeanor, an appellate court should show almost total deference to those findings." *Id*. (internal citations omitted).

## ARTICLE 39.14

"A criminal defendant's right to discovery under the United States Constitution is limited to exculpatory or mitigating evidence in the State's possession, custody or control." *In re State*, 162 S.W.3d 672, 676 (Tex. App.—El Paso 2005, orig. proceeding). "Beyond this, a criminal defendant has no general right of discovery." *Id*. Article 39.14 of the Texas Code of Criminal Procedure, however, provides a defendant with a limited right of discovery. *Hoffman v. State*, 514 S.W.2d 248, 252 (Tex. Crim. App. 1974); *In re State*, 162 S.W.3d at 676.

Article 39.14 provides, in pertinent part:

> Upon motion of the defendant showing good cause therefor and upon notice to the other parties, … the court in which an action is pending shall order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any … photographs …, which constitute or contain evidence

material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies. The order shall specify the time, place and manner of making the inspection and taking the copies and photographs….

TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (West Supp. 2012). "Evidence willfully withheld from disclosure under a discovery order should be excluded from evidence." *Oprean*, 201 S.W.3d at 726.

## ISSUES PRESENTED

The State makes three specific challenges to the trial court's order excluding the photographs in the instant case. First, the State argues that the trial court erred in ordering the State to produce photographs that were not in its possession. Second, the State argues that the trial court's order did not specify a deadline for the production. Finally, the State asserts the trial court's explicit findings establish that the State did not "willfully" withhold the photographs.

Cardenas concedes that the State did not willfully withhold the photographs, but argues that the trial court's order still can be upheld as not being outside the zone of reasonable disagreement. For the reasons stated below, we sustain the State's challenge on this ground. Therefore, we do not address the State's other challenges. TEX. R. APP. P. 47.1 (opinion should only address issues necessary to final disposition of the appeal).

## WILLFUL WITHHOLDING

As previously noted, only evidence "willfully withheld" from disclosure under a discovery order should be excluded from evidence. *Id*. In *State v. LaRue*, 152 S.W.3d 95 (Tex. Crim. App. 2004), the Texas Court of Criminal Appeals provided insight into what behavior constitutes willful withholding.

First, the court considered whether a prosecutor's decision not to turn over evidence and to work on other matters was willful in view of the fact that the prosecutor had been informed

that the case was to be reassigned to another prosecutor. *Id*. at 97. The court concluded that the record contained no evidence that the prosecutor intended to violate the order or harm the defense. *Id*. Instead, the prosecutor explained that once the reassignment was announced, he put the case out of his mind because it was no longer his responsibility. *Id*. The court asserted, "The prosecutor may have been extremely negligent or even reckless with respect to the result of his actions, but we do not believe that this conduct rises to the level of willfulness." *Id*.

Next, the court considered the timing of a fax sent by the prosecutor to defense counsel after the prosecutor was informed that he would be retaining the file and after defense counsel spoke with the prosecutor about the need for the discovery between Christmas and New Year's. *Id*. at 97–98. Defense counsel told the prosecutor that he would be attending a continuing legal education course the first week of January, and needed the discovery "pronto." *Id*. at 98. The State faxed the discovery to defense counsel on January 3rd, the day defense counsel left for his CLE course. *Id*. The fax included a letter from the prosecutor apologizing for the confusion. *Id*.

The court concluded that the record contained no indication that the prosecutor's timing for providing the discovery "was anything more than negligence on the part of the State." *Id*. The court asserted it was not reasonable to infer that the prosecutor's timing "was a strategic and purposeful effort to thwart the defense in its preparation of its case." *Id*. Finally, the court stated, "The trial court's characterization of the event as 'gamesmanship at the expense of defendant's constitutional rights to a fair trial' is not supported by the record." *Id*.

The final example the trial court cited as supporting its finding of willfulness was the State's response to the trial court's ruling. *Id*. The court rejected the trial court's reliance on this response, asserting, "The State's objection to the trial court's ruling, which the court specifically asked to hear, was in no way relevant to the nature of the State's conduct when it violated [the] discovery order." *Id*. at 99.

Having concluded that the record did not support the trial court's findings, the court concluded, "The record demonstrates that the State made what the prosecutor himself described as 'grievous error[s] and mistake[s],' but there is no evidence that the prosecutor in this case acted with the specific purpose of disobeying the court's discovery order, preventing the defense from preparing its case, or denying the defendant his constitutional rights to a speedy trial or effective assistance of counsel." *Id.*

Based on the holding in *State v. LaRue*, extreme negligence or even recklessness does not rise to the level of willfulness. 152 S.W.3d at 97. Instead the record must show that the State purposefully violated the discovery order in an effort to harm the defense. *Id*. at 99.

In this case, the trial court's explicit findings do not support a conclusion that the State willfully withheld the photographs in question. First, the trial court found that the State did not have knowledge that the complainant had taken her own photographs until April 19, 2012, when the complainant informed the State's victim advocate about the photographs. The trial court further found that the prosecutors were not aware of the photographs until May 2, 2012, and only came into possession of the photographs at approximately noon on May 2, 2012. The trial court also found that the prosecutor at the time of the hearing on the motion to suppress had no personal knowledge that the photographs were to be turned over before the hearing. Finally, the trial court found there was no prosecutorial misconduct. Given the statements made by the prosecutors at the hearings regarding the alleged discovery order violation, in view of the fact that the prosecutors changed between the hearing at which the discovery order was discussed and entered and the hearing on the motion to suppress, the record supports the trial court's findings. Comparing the trial court's findings with the willfulness standard articulated by the Texas Court of Criminal Appeals, we conclude the trial court abused its discretion in excluding the photographs because the alleged violation did not rise to the level of a willful withholding.

Cardenas cites two cases in his brief that state evidence should be excluded if it has been withheld in violation of a discovery order, noting those decisions do not reference the necessity of a "willful" withholding. *See Lindley v. State*, 635 S.W.2d 541, 543 (Tex. Crim. App. 1982); *Massimo v. State*, 144 S.W.3d 210, 214 (Tex. App.—Fort Worth 2004, no pet.). Cardenas argues that because not all decisions incorporate the "willful" requirement, the trial court's decision was not outside the zone of reasonable disagreement. We disagree. The Texas Court of Criminal Appeals has clearly applied a standard requiring that the State's actions be a willful withholding in order for a trial court to exclude evidence. *See Oprean*, 201 S.W.3d at 726; *State v. LaRue*, 152 S.W.3d 97-99. Although the court has left open the possibility that alternative sanctions maybe available for a non-willful violation of a discovery order, *see State v. LaRue*, 152 S.W.3d at 99-100, we need not address that issue because the trial court in the instant case imposed the ultimate sanction — exclusion — in the absence of a willful violation.

## CONCLUSION

Because neither the trial court's explicit findings nor the record support a finding that the State willfully withheld the photographs, the trial court abused its discretion in excluding the evidence. The trial court's order is reversed and the cause is remanded to the trial court for further proceedings.

Catherine Stone, Chief Justice

DO NOT PUBLISH