

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00530-CR

RONNIE LEON DABNEY                    APPELLANT

V.

THE STATE OF TEXAS                       STATE

----------

### FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY
### TRIAL COURT NO. 51,705-A

----------

## MEMORANDUM OPINION[1]

----------

Appellant Ronnie Leon Dabney was charged by indictment with manufacturing methamphetamine in an amount of 400 grams or more. A jury convicted him, and the trial court sentenced him to thirty years' confinement. In three points, Appellant contends that the trial court abused its discretion by admitting evidence of an alleged extraneous offense during the guilt phase

---

[1]*See* Tex. R. App. P. 47.4.

because (1) the State failed to give proper notice under rule 404(b) of the rules of evidence or under the parties' agreed pretrial order; (2) the State could not and did not prove the alleged extraneous offense beyond a reasonable doubt; and (3) the admission denied Appellant a fair trial and violated the Fourteenth Amendment Due Process Clause. Appellant also contends that the trial prosecutor's conduct likewise denied him a fair trial and violated the Fourteenth Amendment Due Process Clause. Because we hold that the trial court abused its discretion by admitting the evidence absent proper notice under rule 404(b) since it was not true rebuttal evidence and that the error harmed Appellant, we reverse the trial court's judgment and remand this case to the trial court for a new trial.

**Procedural History**

Appellant was originally indicted on November 3, 2010, in cause number 50302-A. On November 1, 2011, the State filed a pretrial rule 609 notice of intent to use, among other prior acts, a prior state-jail-felony conviction of possession of methamphetamine "for impeachment and/or punishment." Appellant was re-indicted, and the pleadings, motions, and notices from the earlier cause number were transferred to the new trial court cause number.

Approximately four months before trial, Appellant requested that the State provide notice of any extraneous offenses it intended to offer in its case-in-chief. Specifically, on May 24, 2012, Appellant filed a "Request for Notice of State's

2

Intention to Use Evidence of Extraneous Offenses at Trial." It specifically requested,

> [p]ursuant to Rule 404(b), notice, at least ten days prior to the commencement of trial, by the State of its intent to introduce evidence in its case in chief of any other crimes, wrongs, or acts allegedly committed by Defendant, other than those alleged in the Indictment or Information in this cause. Such notice to include for each incident all discovery required to be produced by the State in this Court's discovery orders entered in this cause.

The trial court signed a pretrial order, which stated in pertinent part:

> 8. NOTICE OF EXTRANEOUS OFFENSES. The Prosecution shall provide reasonable notice of any such extraneous offenses it intends to introduce at either stage of the trial.

The prosecutor also signed the pretrial order, and, at a final pretrial hearing on September 7, 2012, Appellant reminded the trial court that pretrial orders had already been signed.

About three months later (and approximately three weeks before trial), the State filed its "Notice of Extraneous Offense, Prior Bad Acts, & Prior Convictions." The document provided:

> The State of Texas files this notice of its intent to prove up the following at the punishment phase of the trial:
>
> 1. The Defendant committed the offense of Driving While Intoxicated [DWI] in Wichita County, Texas on or about June 16, 2012. The Defendant blew a .12 on the breath test at the jail. The Defendant is charged by information in 57782-F with this offense. A copy of the report and videos are available for review in the State's file in this cause.

The State does not challenge Appellant's statement, "The State gave no other written notice of its intent to offer extraneous offenses into evidence."

3

The State's opening statement concluded,

> Once you hear all the evidence in this case, under the theory of party liability, that people who are part of the meth lab team are guilty just as much as the one who's actually doing the cook—when you hear about the ether smell that [Appellant] had on his person, when you hear that he had control of the property, when you hear about the coffee grinder with the white stuff, you know, close to his bedroom, the baggies of meth in his bedroom, and how he had adapted his premises with the security cameras and that latch on the shed, I think . . . the evidence is gonna show beyond a reasonable doubt that he was a party, he was a participant, he was a team member in that meth lab that was happening at his residence. It wasn't an accident, it's not a case of trespass where somebody's gotten onto somebody's property and they have no idea. He knew, he was put on notice about it, he participated in it. And once you hear all of that evidence, I will ask you to find him guilty. Thank you.

Appellant contended in his opening statement that he had nothing to do with the methamphetamine lab found in his home; others had created and used it in his absence:

> This case—I have talked to you about movies where an innocent person is found in suspicious circumstances and they are arrested, convicted, sent to prison, and they escape. In the rest of the movie they're trying to show themsel[ves] to be innocent when they are, in fact, innocent. That's what happens in this case. [Appellant] is living that in real life.

Appellant went on to argue that the evidence would show that the methamphetamine lab found on his property had been set up by his guests while he was away:

> The issue in this case and the issue that's in dispute, did [Appellant] know what was going on that day? Did Bubba Wilson or Chad Lydolph call Mr. Pendergrass without [Appellant's] knowledge and tell him to come out there and powder his methamphetamine? You're gonna hear evidence that meth cooks will trespass.

On the third day of the guilt phase of the trial, the State filed a trial brief: "The State's Bench Brief on Rebutting the Defensive Theory of Accident/Mistake." The State argued in its brief and to the trial court that the prosecution should be allowed to present evidence of the extraneous offense of manufacturing a controlled substance in its case-in-chief through Bobby Dilbeck, despite the trial court's pretrial order and despite the fact that the State had not provided notice as required by rule 404(b). Specifically, the prosecutor stated to the trial court,

> The testimony that I would proffer, I've attached Bobby Dilbeck's report. In July of 2004, the North Texas Regional Drug Task Force executed a search warrant at the same residence, 823 Rathgeber. The Defendant was present. There was an active meth lab in that trailer.

At the hearing outside the presence of the jury, Appellant objected on the ground that rule 404(b) requires the State to provide notice of any extraneous offense that it intends to offer during its case-in-chief. The State argued in its filed brief and to the trial court that because Appellant had already asserted the defense, the State could introduce the extraneous offense evidence during its case-in-chief. The State further argued that it did not have to provide notice to Appellant of its intent to offer this extraneous offense in its case-in-chief because the evidence was "rebuttal evidence" offered to rebut the defensive theory "of accident or mistake."

5

Specifically, the State argued that Appellant had raised the defense that he "was really just the victim of unlucky coincidences, and, like Harrison Ford's character in *The Fugitive*, it was all just an unfortunate accident or mistake."

The State argued that it was entitled to rebut this defensive theory by introducing evidence that officers had previously found a methamphetamine lab in Appellant's trailer and that in that case, he had signed a judicial confession to having possessed more than four but less than 200 grams of methamphetamine from that lab.

The State further argued that Appellant was on notice that the prior offense existed before he advanced his defensive theory in voir dire and his opening statement. The trial court ruled that evidence of the extraneous offense was admissible.

The State then called Dilbeck to testify about the prior drug offense. Dilbeck is an investigator for the district attorney's office, and before that, he had been a police officer with the Wichita Falls Police Department. Appellant's attorney objected to Dilbeck's testimony on the ground that the State's failure to give notice of its intent to introduce the evidence violated due process. The trial court overruled the objection.

Dilbeck testified that in 2004, he had participated in the execution of a search warrant at Appellant's residence. The prosecutor suggested, and Dilbeck agreed, that the purpose of the warrant was to search for drugs or a methamphetamine lab. Appellant was at the residence when the search was

conducted. During the search, the police found cans of ether, pseudoephedrine blister packs, rubber hosing, syringes, starter fluid cans, and scales, and Dilbeck testified that these items are commonly found in methamphetamine labs. The prosecutor repeatedly made reference to a "meth lab." On cross-examination, Dilbeck testified that the law enforcement personnel conducting the search did not find anhydrous ammonia, lithium batteries, or sulfuric acid and that there was no smell of any chemical odor at the residence. He acknowledged that anhydrous ammonia is a key component in making methamphetamine.

Dilbeck testified that he had worked for the Wichita County District Attorney's Office for almost four years but that the prosecutor had never interviewed him about the 2004 offense until after the second day of Appellant's trial in the case before us. Dilbeck testified that he had not looked at the probable cause affidavit for the 2004 offense until the morning of the third day of trial. Dilbeck's report was not in the State's file prior to trial.

There was no evidence that Appellant was convicted of manufacture of methamphetamine as a result of the 2004 search, only the repeated allusion to a "meth lab" and the prosecutor's representation to the trial court that

> [t]he similarities between the 2004 event and this event [are] almost identical except the meth lab is in the trailer[,] not in the shop. But otherwise, it's his residence, same place, he's present when the search warrant is executed, and all of these accoutrements of a meth lab are found right there.

7

**Rule 404(b) Notice**

In his first issue, Appellant contends that the trial court erred by admitting evidence of a prior manufacture of methamphetamine because the State did not give proper notice under rule 404(b).  Appellant correctly argues that a defendant is entitled to be tried on the accusation in the State's pleading and not for a collateral crime or for being a criminal generally.[2]  Rule 404(b) provides,

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  *It may, however, be admissible for other purposes, such as proof of* motive, opportunity, intent, preparation, plan, knowledge, *identity, or* absence of mistake or accident, **provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.**[3]

The Texas Court of Criminal Appeals has held,

> Rule 404(b) literally conditions the admissibility of other-crimes evidence on the State's compliance with the notice provision of Rule 404(b).  . . . This is not to say that a trial court is without discretion to utilize its powers (such as granting continuances to reduce surprise) to permit the State to bring itself in compliance with the notice provision of Rule 404(b).  **But, a trial court must use these powers to ensure compliance and not to excuse noncompliance.**
>
> Since the notice requirement of Rule 404(b) is a rule of evidence admissibility, then it is error to admit Rule 404(b) evidence

---

[2]*Nance v. State*, 647 S.W.2d 660, 662–63 (Tex. Crim. App. 1983).

[3]Tex. R. Evid. 404(b) (emphasis added).

when the State has not complied with the notice provision of Rule 404(b).[4]

The Texas Court of Criminal Appeals has also recognized that rebuttal evidence may be offered in the State's case-in-chief if a defendant opens the door to such evidence in his voir dire and opening statement.[5] And rule 404(b) does not require notice of the State's intent to use the extraneous offense in rebuttal.[6] But that exception is based on the fact that the State cannot anticipate before trial genuine rebuttal evidence.[7]

In her concurrence to *Jaubert v. State*, a case involving the notice requirement regarding extraneous offense evidence admitted at punishment in violation of article 37.07, section 3(g), not extraneous offense evidence admitted during the guilt phase without notice under rule 404(b), Judge Cochran explained the notice requirement and policy behind it:

[4]*Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) (emphasis added) (citations omitted).

[5]*Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008); *Powell v. State*, 63 S.W.3d 435, 438–40 (Tex. Crim. App. 2001); *see also Mendoza v. State*, No. 02-11-00197-CR, 2012 WL 43172, at *7 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.) (mem. op., not designated for publication).

[6]Tex. R. Evid. 404(b); *Herring v. State*, 752 S.W.2d 169, 172 (Tex. App.—Houston [1st Dist.]), *rev'd on other grounds*, 758 S.W.2d 283 (Tex. Crim. App. 1988).

[7]*See Jaubert v. State*, 74 S.W.3d 1, 5 (Tex. Crim. App.) (Cochran, J., concurring), *cert. denied*, 537 U.S. 1005 (2002); *Wiggins v. State*, No. 02-03-00355-CR, 2004 WL 2201310, at *6 (Tex. App.—Fort Worth Sept. 30, 2004, pet. ref'd) (not designated for publication).

[T]he letter of the law is not always a perfect reflection of the spirit of the law. The spirit of Rule 404(b), article 37.07, § 3(g), and article 38.37 is to ensure that Texas criminal proceedings are not a contest of clever gamesmanship or trial by ambush. . . . [O]ur Rules of Evidence are drafted to ensure that Texas criminal practitioners remain gentlemen and gentlewomen who do not spring evidentiary surprises on their adversaries.

A number of our Rules of Evidence require advance notice when practicable and reasonable. Rule 404(b) is one of those rules. It requires that the prosecution give the defense reasonable notice of its intent to offer extraneous offense evidence in the State's case-in-chief. . . . This requirement of advance notice, upon timely request, applies only to the State's case-in-chief because prosecutors are no more clairvoyant than the rest of the world. They cannot, and thus should not be required to, predict precisely what evidence the defense will introduce or what rebuttal evidence might be relevant as a result of a particular defense. Our law has long recognized this fact.

On the other hand, it is possible for prosecutors to manipulate the notice rule's purpose and applicability simply by reserving all extraneous offense evidence until its rebuttal case, when notice is not required. Although this strategy conforms to the letter of the law, it clearly violates the spirit.

. . . .

[I]t may behoove a prosecutor to voluntarily deliver to the defense a written list of all known incidents which are not explicitly set out in the indictment, but of which the prosecutor is aware and which might become admissible for any reason at any time. This self-imposed duty has several beneficial aspects: 1) it assures that no conviction will be reversed for the failure to give reasonable notice, should the prosecutor decide that he needs to use what he had originally thought might be rebuttal extraneous offense evidence during his case-in-chief; 2) if the prosecution discovers additional extraneous offense evidence on the eve of trial or even during trial, he has shown good faith in revealing all of the evidence he *was* aware of well before trial; 3) if the list is titled "potential intrinsic and extrinsic act evidence," neither the parties nor the trial judge need engage in a hair-splitting debate concerning whether the specific evidence is evidence of other acts under Rule 404(b) or is "same transaction"

evidence not subject to Rule 404(b) notice requirements; 4) a defense attorney avoids any possible allegations of ineffective assistance of counsel claims for failing to file a written request for notice; 5) a trial judge need not grant a mid-trial continuance for the defense to investigate "surprise" extraneous offense evidence; 6) such an exercise requires both the prosecutor and defense to focus on the entire body of potentially admissible evidence well before the trial, and either or both may revise their original positions based upon that review; finally, and most importantly, 7) it is fair beyond all measure.[8]

Similarly, this court has warned in article 37.07, section 3(g) notice cases,

> [W]e caution the State that attempts to circumvent the notice requirement of article 37.07, section 3(g) by offering extraneous offense evidence in rebuttal when it does not properly rebut the defendant's punishment theories will be frowned upon. In all article 37.07, section 3(g) cases with notice issues, we will closely review the nature of the "rebuttal" evidence to determine whether the State introduced the evidence at that stage of the punishment trial merely to avoid the mandatory notice requirements.[9]

We see no reason not to follow that same policy in rule 404(b) cases with notice issues.

The State contends that Appellant opened the door to the extraneous offense evidence by "unequivocally assert[ing]" in his opening statement that he "did not know what was taking place" in his home; that it offered the evidence as rebuttal evidence and therefore was not required to give notice of its intent, since it had no intent to offer the evidence at all until Appellant interjected his defense

---

[8] *Jaubert*, 74 S.W.3d at 4–8 (Cochran, J., concurring) (footnotes omitted).

[9] *Washington v. State*, 943 S.W.2d 501, 506 (Tex. App.—Fort Worth 1997, pet. ref'd) (op. on reh'g); *see also Wiggins*, 2004 WL 2201310, at *6.

11

at trial; and that offering the rebuttal evidence during its case-in-chief was proper. The State characterizes Appellant's defense as "mistake or accident." Appellant did not raise a mistake-of-fact defense. Nor did he raise a defense of mistake or accident. Such defenses require that the defendant admit that he did the act, but because of his own mistake of fact or accident, he lacks the requisite culpability to have committed the offense.[10] Appellant's defense was that he did not create or use a meth lab at his home; someone else did in his absence and without his knowledge.

Despite its improper use of the term "accident or mistake" in characterizing Appellant's defensive theory, the State made clear below and explains in its brief that it offered the extraneous offense evidence to rebut Appellant's theory that he had been in the wrong place at the wrong time. The prosecutor argued,

> [T]he Court of Criminal Appeals case law talks about Professor Whitmore's Doctrine of Chances, that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance. So you might have this series of unfortunate things that happen once, but when almost identical things have happened in the past, the odds of it being an accident or mistake just are impossible. And that's why it serves as rebuttal evidence.

Appellant questions the State's claim that it was surprised when Appellant pointed out in voir dire that any drug activity had been set up during his absence and without his knowledge or assistance. That had been his claim from the start

---

[10] *See Johnston v. State*, 145 S.W.3d 215, 222–24 (Tex. Crim. App. 2004); *Morgan v. State*, 692 S.W.2d 877, 881–82 (Tex. Crim. App. 1985).

of the police investigation. As Appellant points out, the State had in its file a report from the first officer on the scene regarding the instant offense, Officer Dottie Whitefield, and that report stated that Appellant had told the officer that he had just arrived at the scene (his home) before she did. When Appellant attempted to ask Whitefield on cross-examination whether he had told her that he had only been there for a few minutes when the police arrived, the State lodged a hearsay objection that was sustained. That was Appellant's argument—he had just arrived home to find that people had set up a drug lab in his absence. Appellant's position was supported by the testimony of Stephanie Dickerson Harris, who testified that she and Appellant had arrived at the house just before the police arrived. She was arrested with Appellant.

Because Appellant had insisted from the date the police investigation began that he was not involved with the drug lab, he argues that the State's contention that it did not intend to offer the extraneous offense evidence until the prosecutor heard his opening argument is not credible.

This evidence of the extraneous offense for which Appellant was neither prosecuted nor convicted is not true rebuttal evidence. The State was aware that Appellant's unwavering stated position was that he had arrived home immediately before the police arrived. Appellant was therefore entitled to rely on the State's notices and to conclude that the convictions listed therein, including

13

the DWI conviction and methamphetamine possession conviction, "were the *only* [extraneous offenses] that the State intended to offer."[11]

Again, in the case before us, the trial court had signed a pretrial discovery order requiring the State to "provide reasonable notice of any . . . extraneous offenses it intend[ed] to introduce at either stage of trial." The Texas Court of Criminal Appeals has held,

> Evidence willfully withheld from disclosure under a discovery order should be excluded from evidence. When reviewing a trial judge's decision to admit or exclude evidence, an appellate court must determine whether the judge's decision was an abuse of discretion.[12]

In determining whether the State's failure to comply with a discovery order rises to the level of willfully withholding disclosure under the discovery order, we are instructed to consider the conduct and representations of the State. In *Oprean*, the Texas Court of Criminal Appeals noted,

> Two things are particularly unacceptable about the prosecutor's conduct. First, the prosecutor told defense counsel the night before the punishment phase began that she intended to introduce only the judgments and sentences from the previous convictions. She did not dispute the fact that she made that statement. There is no suggestion that later that night or early the next morning she suddenly discovered the videotape's existence. And because her signature appears at the end of the discovery order, it cannot be said that she was unaware of it.

---

[11]*McDonald v. State*, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005).

[12]*Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006) (quotation marks and citations omitted).

14

Second, when defense counsel argued that he had not received notice as required by the discovery order, the prosecutor responded by stating that "there was no [Article 37.07] charge in [the] Court's discovery order." When affirming the judgment of the trial court, the Court of Appeals relied on the prosecutor's explanation.[13]

The *Oprean* court concluded,

[T]he validity of the explanation offered by the prosecutor is a relevant factor that should be considered when determining willfulness. The discovery order did not mention anything about Article 37.07, and therefore was not limited by that provision. Because the prosecutor knew about the discovery order and chose to invoke Article 37.07 after counsel called her attention to the order, she made a conscious decision to violate the plain directive of the discovery order.[14]

Like the *Oprean* prosecutor, the trial prosecutor in the case before this court was aware of the discovery order—he signed it. He gave Appellant notice of intent to offer evidence of the possession conviction and others as impeachment and punishment evidence. He later gave Appellant notice of the State's intent to offer evidence of a prior DWI conviction in the punishment phase of the trial, but the prosecutor gave no notice of intent to offer evidence of an extraneous offense of manufacturing methamphetamine. At no point did the prosecutor suggest that he was not aware of the discovery order. As did the *Oprean* prosecutor, the prosecutor in this case made the conscious, tactical decision not to disclose his intent to offer extraneous offense evidence despite

---

[13] *Id.* at 727 (citation omitted).

[14] *Id.* at 728.

the discovery order. Accordingly, we hold that the trial court abused its discretion by allowing the State to present evidence to the jury of the alleged extraneous offense of manufacturing methamphetamine when same had not been revealed to Appellant in response to his 404(b) request.

The dissent states that "the State's knowledge that [Appellant] told police that he was not involved with the drug lab did not charge the State with knowledge of [his] defensive theory at trial,"[15] which was that he was not involved with the drug lab. Appellant's defense is not some esoteric, unexpected defense. It is essentially a defense of "I'm not guilty." If a statement in voir dire that the defendant is not guilty of the offense he is charged with opens the door to the admission of undisclosed prior acts of misconduct, discovery orders have no meaning. Both courts and the legislature have spoken to the importance of complying with discovery orders and avoiding legal gamesmanship and trial by ambush.

**Harm**

The next issue is whether the State's failure to disclose its intent to introduce evidence of the alleged extraneous offense of manufacturing methamphetamine rendered the trial court's erroneous admission of the undisclosed extraneous offense reversible error.

---

[15]Dissenting Op. at 2.

16

The *Hernandez* court has discussed the appropriate harm analysis for failure to provide the required 404(b) notice of intent to offer evidence of extraneous offenses:

> Since the notice requirement of Rule 404(b) is a rule of evidence admissibility, then it is error to admit Rule 404(b) evidence when the State has not complied with the notice provision of Rule 404(b). The Rule 44.2(b) harm standard is whether the error in admitting the evidence "had a substantial and injurious effect or influence in determining the jury's verdict." The issue in cases like this is how to apply this standard. We find helpful the Austin Court of Appeals' discussion in *Roethel*:

>> Accordingly, we must assess harm from the violation of (a notice provision similar to Rule 404(b)'s) against its intended purpose. Although the violation of the notice provision resulted in the improper admission of evidence, we cannot employ the harm analysis used for violations of the rules of evidence concerning relevancy because the purpose of those rules differs from the purpose of the (Rule 404(b) notice provision). The rules of evidence governing relevancy limit the use of evidence that may be unfairly prejudicial or misleading; for instance, evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person to show that the commission of the crime at issue is consistent with the defendant's character, but is admissible for other purposes. When evidence of an extraneous offense is admitted to prove such character conformity, we examine the record to determine how the admission of this substantively inadmissible evidence affected the jury's verdict. That test is appropriate because the erroneous admission of the evidence thwarts the rule's purpose of shielding the jury from evidence used for improper reasons. The notice requirement found in (Rule 404(b)), however, does not relate to the substantive admissibility of the evidence. The lack of notice does not render the evidence inherently unreliable, but instead raises a question about the effect of procedural noncompliance. The purpose of the notice requirement is to enable the

defendant to prepare to meet the extraneous offense evidence. Thus, we must analyze how the deficiency of the notice affected (the defendant's) ability to prepare for the evidence.[16]

The State contends that "Appellant cannot claim surprise as to the event itself" because "[t]he State did give notice of the conviction that arose from the events testified to by Bobby Dilbeck, pursuant to Rule 609 of the Texas Rules of Evidence." Appellant challenges the State's contention that it had given him proper notice that it intended to offer impeachment evidence of the extraneous offense of *manufacturing* a controlled substance by filing a rule 609 notice that it intended to introduce a prior conviction for *possession* of a controlled substance. Appellant argues that the State misled the trial court by stating that its notice under rule 609 regarding the possession offense also put Appellant on notice that the State intended to offer in its case-in-chief evidence of a prior extraneous offense of manufacturing a controlled substance.

Rule 609 provides that "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude."[17] As Appellant points out, this rule does not allow the introduction of impeachment evidence during the State's

---

[16]*Hernandez*, 176 S.W.3d at 824–25 (citations omitted).

[17]Tex. R. Evid. 609.

18

case-in-chief.[18]  It is admissible only if the defendant testifies, and then it is admissible only to impeach the defendant's credibility.[19]  Finally, even if conviction of a prior felony offense may be admissible as impeachment, the details of the offense are not admissible.[20]

Appellant did not testify, but the State nevertheless offered evidence of an extraneous offense, complete with its version of the details of the offense that improperly suggested that Appellant was guilty of manufacture of a controlled substance, ostensibly to defeat the suggestion that Appellant was going to deny his guilt.  The State argued to the jury that Appellant was guilty of manufacturing methamphetamine in the case on trial, although another person had confessed to being the cook in the case, and Appellant had confessed to only mere possession in the prior case.  The extraneous offense evidence was primarily used to show character conformity, although there was no evidence that Appellant was guilty of a prior manufacturing offense.  When the trial court admitted the evidence suggesting that Appellant had previously been involved in the manufacture of methamphetamine, Appellant suffered harm:  the harm of

---

[18]*Id.*

[19]*Id.*

[20]*Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986), *cert. denied*, 484 U.S. 1079 (1988).

being unprepared to defend against that evidence and the harm of the jury's great likelihood of being improperly influenced by the evidence.

Often appellate courts suggest that when the State fails to comply with discovery rules, the defendant's remedy is to seek a continuance.[21] But here the problem is not merely the failure to comply with discovery rules and discovery orders; it is also the fact that the harmful, undisclosed evidence was not admissible even with proper notice. "When the trial court improperly admits substantially inadmissible Rule 404(b) evidence that substantially influenced the jury's verdict, the influence on the jury verdict will always be 'injurious.'"[22]

Following the rationale of the *Oprean* court, we hold that the trial court's abuse of discretion in admitting evidence of the unadjudicated manufacture of methamphetamine offense was reversible error. We sustain Appellant's first issue, and because it is dispositive, we do not reach his remaining issues.

**Conclusion**

Having sustained Appellant's first issue, which is dispositive, we reverse the trial court's judgment and remand this case to the trial court for a new trial.

---

[21] *Osbourn v. State*, 59 S.W.3d 809, 816 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002).

[22] *Oaks v. State*, No. 05-07-00384-CR, 2008 WL 3307083, at *1 (Tex. App.—Dallas July 31, 2008, no pet.) (not designated for publication) (citing *Hernandez*, 176 S.W.3d at 825).

                                                   /s/ Lee Ann Dauphinot
                                                   LEE ANN DAUPHINOT
                                                   JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

WALKER, J., filed a dissenting opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 16, 2014